UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THEODUS JORDAN,<br><br>    Plaintiff<br><br>    V.<br><br>BOSTON PUBLIC SCHOOLS,<br><br>    Defendant | Civil Action No. 10688-NMG |

**DEFENDANT'S LOCAL RULE 56.1 STATEMENT OF FACTS AND SUPPORTING EXHIBITS[1]**

NOW COMES THE DEFENDANT, Boston Public Schools, (hereinafter "Boston" or "BPS"), and moves this Honorable Court, pursuant to Fed.R.Civ.P. 56, to grant Summary Judgment in its favor as to all counts of Plaintiff's Complaint in the above-captioned matter. Defendant states that there are no genuine issues of material fact, and that Defendant is entitled to judgment as a matter of law. As grounds for this motion, Defendant hereby states the following facts:

1. Plaintiff is a black male born June 12, 1949. *Exhibit B, Employee Registration/Verification Form.*

---

[1] All of the supporting exhibits attached hereto in conjunction herewith are true and accurate copies. See *Exhibit A, Affidavit of Counsel.*

2. Plaintiff is certified by the Massachusetts Department of Education to teach Social Studies in grades 9-12, Behavioral Science in grades 9-12 and as a principal for grades 9-12. Exhibit C, *Certification.*

3. The Plaintiff started working for the Boston Public Schools in 1979 as a Substitute Teacher. *Exhibit D, Letter of employment verification dated October 5, 1988.*

4. The Plaintiff worked as a daily substitute teacher for 70 days in 1980-1981. Id.

5. For the 1981-1982 school year the Plaintiff was a provisional teacher under contract for one year at the Thompson Middle School. *Exhibit D, Letter of employment verification dated October 5, 1988.*

6. For the 1982-1983 school year Plaintiff was again a daily substitute teacher and worked 166 days. *Exhibit D, Letter of employment verification dated October 5, 1988.*

7. From 1983 to 1987 Plaintiff was a provisional teacher at Jamaica Plain High School and South Boston High School. *Exhibit D, Letter of employment verification dated October 5, 1988.*

8. In 1987-1988 Plaintiff returned to being a daily substitute teacher. *Exhibit D, Letter of employment verification dated October 5, 1988.*

9. For the 1988-1989 school years, Plaintiff was a provisional teacher at the Irving Middle School. *Exhibit E, Provisional teacher contract.*

10. Plaintiff received an overall unsatisfactory evaluation from the Irving School by Principal Steven Leonard who recommended termination. Exhibit F, *Letter from Steven Leonard to Joseph Bage.*

11. Plaintiff filed a grievance regarding this evaluation because it was not conducted before May 15, 1989 as required by the collective bargaining agreement therefore the evaluation was voluntarily rescinded in November 1989. Exhibit G, *Settlement Agreement*.

12. From 1989 to 2001 Plaintiff was a substitute teacher. Exhibit H, *Affidavit of Joeseph Shea.*

13. In 2001, Plaintiff was terminated as substitute teacher after Boston received several complaints from school administrators requesting that Plaintiff not be reassigned to their respective schools:

    a) On October 20, 1994 Plaintiff was notified by letter from Boston employee Alvin Shiggs outlining Plaintiff's lack of compliance with responsibilities as a substitute teacher (this letter included a complaint filed by the administration of the Marin Luther King Junior Middle School) and a warning to Plaintiff that receipt of three complaints could result in the discontinuation of his service as a substitute teacher. Exhibit I, *October 20, 1994 letter from Alvin Shiggs with Memorandum from Steven Leonard.*

    b) On April 11, 1995 Vera Dailey of the Mary Curley School wrote a letter complaining that Plaintiff failed to implement proper student disciplinary procedures as set out by school administration and requested that Plaintiff not be reassigned to the Curley School. Exhibit J, *Memorandum to Alvin Shiggs from Vera Dailey.*

    c) On February 9,1998 Ray Peterson of Hyde Park High School wrote a letter complaining of Plaintiff's tardiness and requesting Plaintiff not be assigned to Hyde Park High School. See Exhibit K, *Memorandum to Alvin Shiggs from Ray Peterson.*

    d) On May 4,1998 Emily Shamieh sent a memorandum to Teacher Placement requesting that Plaintiff be added to the "Do Not Use" list at the Winthrop School for failure to carry out an assignment requested by the Evaluation Team Leader. Exhibit L, *Memorandum to Alvin Shiggs from Emily Shamieh.*

    e) On April 4, 1998 the Joseph Hurley Elementary School placed the Plaintiff on their "Do Not Use List." Exhibit M , *Substitute Employee Management System for Theodus Jordan.*

    f) On September 28, 1998 the Samuel Mason Elementary School placed the Plaintiff on their "Do Not Use List." Exhibit M , *Substitute Employee Management System for Theodus Jordan.*

    g) On April 8, 1999 Janet Short, Principal of the Tobin School, also complained that Plaintiff refused to follow administrative mandates related to student discipline. Exhibit N, *Memorandum to Wanda Manzo from Janet Short, April 8, 1999.*

    h) On April 9, 1999 a letter was sent to Theodus Jordan from the Chief Operating Officer alerting him of the Tobin Elementary School's complaint and "lack of compliance with your responsibilities as a substitute teacher." It further notifies Mr. Jordan that he had a right to respond to the complaint and that if he received "three (3) official complaints, your services as a substitute teacher may be discontinued." Exhibit O, *April 9, 1999 letter from Michael Contompasis.*

    i) On October 23, 2000 the Donald McKay Elementary School placed the Plaintiff on the "Do Not Use List." Exhibit M , *Substitute Employee Management System for Theodus Jordan.*

14. Another complaint was issued against Plaintiff after an altercation with a City of Boston employee at a Department of Employment and Training hearing, Boston decided to terminate Plaintiff's services. Exhibit P, *Affidavit of Edward Kelleher.*

15. On June 22, 2001, Plaintiff was notified by hand delivered letter that his services as a substitute teacher were no longer needed, and that he was, effective immediately, not employed by Boston as a substitute teacher. Plaintiff refused to sign and accept the letter. Exhibit Q, *Termination Letter.*

16. Plaintiff worked for Brockton Public Schools as a substitute teacher from 2001-2004.  Exhibit R, Deposition of Theodus Jordan ("Jordan Depo") pg.100:15-21.

17. Plaintiff was re-hired as a substitute teacher in 2004. Exhibit S  and Exhibit R, Jordan Depo pg.100:20-21.

18. Plaintiff was placed on "Do Not Use" list subsequent to his hire in 2004 by four (4) schools to date. *Exhibit T, Do Not Use list 2004-present.*

19. In 1991, Plaintiff filed an action in Massachusetts Superior Court entitled *Theodus Jordan v. Boston Public Schools and Teachers Credit Union*, Civil Action No. 91-5742-D, in which he alleged, *inter alia*, negligence of the Boston in handling his teaching status, a right to employment in the Boston Public Schools as a tenured teacher and employment discrimination by the Boston. Exhibit U, *Judgment on Findings by the Court.*

20. The Massachusetts Superior Court entered summary judgment in favor of the defendants on September 1, 1994. Exhibit U.

21. In 1992, Plaintiff filed a complaint with the Massachusetts Commission Against Discrimination, hereinafter ("MCAD"), alleging that the Boston had discriminated against him because of his race when it refused to hire him for a position; Plaintiff's MCAD complaint was dismissed for lack of probable cause on January 10, 1994. See *Exhibit V, MCAD Dismissal.*

22. Plaintiff appealed the lack of probable cause finding to the Massachusetts Superior Court, which entered summary judgment in favor of Boston, and on March 13, 1996, the Massachusetts Court of Appeals (Docket No. 94-P-1845) affirmed the Massachusetts Superior Court's decision in favor of the Defendants. *See Exhibit W, Appeals Court Decision.*

23. In 1996, Plaintiff filed a complaint with the MCAD and the Equal Employment Opportunity Commission, hereinafter ("EEOC"), alleging that Boston refused to hire him because of his race. Plaintiff also alleged that Boston's refusal to hire him was in retaliation for filing internal grievances and for filing a discrimination charge with the MCAD in 1992 after Boston had refused to hire him for a position. *Exhibit X, MCAD dismissal.*

24. On May 5, 1997, the MCAD dismissed Plaintiff's complaint due to his failure to establish a prima facie case of retaliation. *Id.* On July 7, 1998, the EEOC issued a Dismissal of Plaintiff's complaint based on the MCAD's decision. *Id.*

25. In 1999, Plaintiff filed a complaint in Massachusetts Superior Court against Boston and the Internal Revenue Service, hereinafter ("IRS") for illegal garnishment of wages. The case was removed to Federal Court, and the United States District Court, for the District of Massachusetts, granted Defendant's motion for summary judgment on the pleadings. *Exhibit Y, Judge Tauro's Decision.*

26. Plaintiff appealed this U.S. District Court decision to the United States Court of Appeals for the First Circuit, where his appeal was dismissed due to the fact that Plaintiff could not satisfy a "show cause" order issued by the court. *Exhibit Z, First Circuit Decision.*

27. On November 19, 2001, Plaintiff filed another complaint with the Massachusetts Commission Against Discrimination ("MCAD") and the Equal Employment Opportunity Commission ("EEOC") alleging that Boston discriminated against him on the basis of race, age and gender by refusing to hire him for positions for which he applied. Plaintiff also alleged that Boston's refusal to hire him was in retaliation for filing internal grievances and for filing discrimination charges in the past. Exhibit AA, *MCAD Complaint filed by Theodus Jordan.*

28. Plaintiff did not allege discrimination based on disability in his 2001 MCAD Complaint. *Id, Exhibit R, Jordan Depo pg. 77:15-18.*

29. Defendant responded to the Complaint on January 29, 2002 and denied all allegations giving reasons therefore. Exhibit BB, *Boston Public School Position Statement (attachments to position statement are already included in this Statement of Facts).*

30. Plaintiff applied for a minimum of 19 administrative positions between March and August of 2001. Exhibit CC, *Applications for positions in 2001.*

31. Plaintiff did not possess the requisite experience, education, or positive employment history required for any of the positions to which he applied between 1979 and 2001. Exhibit H, *Affidavit of Joseph Shea* ¶16, and Exhibit DD, *resume of Theodus Jordan.*

32. In making employment decisions, Boston seeks to hire administrators that use their education and background to plan out their careers carefully, and then apply for positions that are most consistent with their experience, and which best suit their professional goals.

33. An applicant that haphazardly applies to dozens of positions, many administrative in nature, that does not possess experience and/or education that directly relates to such a highly coveted position, is not likely to make it past the initial stages of consideration by the screening committee convened for the purpose of selecting principals or assistant principals. Exhibit H, *Affidavit of Joseph Shea* ¶10.

34. On January 8, 2001, the Director of Human Resources wrote to Mr. Jordan regarding two positions he had applied for stating that his application would be considered. The letter also advises Mr. Jordan that "[i]ntegral to that consideration, as described in our website, is a cover letter and resume that speaks to the skills and experiences of the candidate as they relate to the requirements of the particular position applied for. I would urge all candidates to focus on these matters in order to get past the original screening process and be invited for an interview." Exhibit EE.

35. Administrative positions such as Assistant Headmaster or Headmaster/Principal generally require a Masters Degree in education or a related field, at least three (3) years of successful teaching experience, an MA license for School Principal/Assistant Principal, demonstrated leadership qualities, interpersonal skills, and personal characteristics necessary for working effectively with students, teachers, administrators and parents, among others. It is also preferred that the candidate possess urban teaching experience, experience as a school administrator, and experience in grant writing or fundraising. Exhibit H, *Affidavit of Joseph Shea* ¶14.

6

36. Candidates for a given Headmaster/Principal and Assistant Headmaster/Principal position are screened by the School Site Council which consists of parents, teachers, and administrators. Once they have selected their top three candidates, those individuals are interviewed by the Superintendent of Boston Public Schools and one is appointed by him. Exhibit H, *Affidavit of Joseph Shea* ¶15.

37. One position Plaintiff applied for was Senior Recruitment Specialist on May 15, 2001. This position required 3-5 years experience in recruiting and staffing or similar Human Resources or school-based leadership positions. *Exhibit FF, Senior Recruitment specialist posting.*

38. This position was given to Diane who had extensive experience as an employment and recruitment specialist in several different educational and corporate organizations. *Exhibit GG, Resume of Diane.*[2]

39. The composition of the Deputy Superintendents and Chief Operating Officer appointed by the Superintendent, Thomas W. Payzant from 1996 to 2001 was 37.5% Black, 37.5% White, 12.5% Hispanic and 12.5% Asian. There were five women and three males in these management positions. Exhibit HH, *Appointments.*

40. Between 1995 and 2001, Superintendent of Schools Thomas Payzant appointed 83 building administrators. The composition of these appointments was: 21 males, 62 females, 36 were Black, 33 were White, 10 were Hispanic, and 4 were Asian. Exhibit II, *Memorandum to Michael Contompasis from Kenneth Caldwell.*

41. The composition of the Office of Human Resources as of December 2001 totaled 33 employees, 39.4% were Black, 18.2% were Hispanic, 42.4% were White. Exhibit JJ, *Office of Human Resource Composition.*

42. On February 4, 2003, the MCAD dismissed Plaintiff's complaint due to his failure to establish a prima facie case of race, gender or age discrimination. See Exhibit KK, *MCAD Dismissal and Notification of Rights*.

43. Plaintiff appealed the MCAD's dismissal and the MCAD affirmed its' finding of lack of probable cause on May 2, 2003. See Exhibit LL, MCAD Affirmation.

44. Subsequently, the EEOC issued a Dismissal of Plaintiff's complaint based on the MCAD's decision. Defendant does not dispute that the date on the EEOC is March 23, 2002 and that date is incorrect. Exhibit MM, *EEOC Dismissal.*

---

[2] Only first names are used to protect the confidentiality of Boston's employees.

7

45. Plaintiff cannot recall when he received the dismissal nor whether he can prove a date of receipt. Exhibit R, Jordan Depo. Pg 80-81, Exhibit OO, *Answer to Interrogatoies, Number 8*.

46. On April 1, 2004, after receiving both the MCAD and EEOC dismissals, Plaintiff filed this Complaint in Federal court. In his Complaint before this Court, Plaintiff alleges that Boston wrongfully terminated his employment, [wrongfully failed to hire Plaintiff for several positions to which he applied], discriminated against him on the basis of race, gender, age, and disability, and retaliated against him for filing previous complaints of discrimination. Plaintiff attaches the EEOC dismissal to the Complaint.

47. The Court screened Plaintiff's Complaint and Judge Saris issued a Memorandum and Order on May 17, 2004, directing the Plaintiff to demonstrate good cause as to why his Plaintiff should not be dismissed. Plaintiff responded on June 23, 2004. *Docket No. 4* .

48. Judge Gorton allowed Plaintiff's claims to proceed against the Boston Public Schools but not the Massachusetts Commission Against Discrimination. Docket No.7.

49. Defendant served Plaintiff with Requests for Production of Documents and Interrogatories on May 9, 2006. Exhibit NN.

50. Plaintiff responded to interrogatories on October 21, 2006. Exhibit OO.[3]

51. On December 14, 2006 Plaintiff was deposed. Exhibit R.

52. In Plaintiff's deposition he identifies that he applied for a position as principal of the Connolly School. He stated this position was given to a black female. Exhibit R, pp.111-114. Plaintiff alleged this person was less qualified than him because "someone else" told him she was. Id.

53. Plaintiff has not served responses to document requests and Defendant has filed Motion to Compel which was granted April 17, 2007. Docket No. 28.

54. To date Plaintiff has not served responses to Defendant's document requests.

---

[3] Please note that the "signature under pains and penalties of perjury" in response to the Interrogatories is dated July 30, 2006.

WHEREFORE, Defendant hereby moves this Honorable Court to grant summary judgment in its favor as to all counts of Plaintiff's Complaint, as there are no genuine issues of material fact, and that Defendant is entitled to judgment as a matter of law.

|  |  |
|---|---|
| **CERTIFICATE OF SERVICE** | RESPECTFULLY SUBMITTED<br>DEFENDANT, CITY OF BOSTON |
| I hereby certify that on this day a true copy of the above document was served by mail upon the Plaintiff. | By its attorney:<br><br>/s/ Andrea Alves Thomas<br>Andrea Alves Thomas, BBO# 660050 |
| __5/ /07____   /s/Andrea Alves Thomas<br>Date              Andrea Alves Thomas | Assistant Corporation Counsel<br>Boston Public Schools<br>26 Court Street, 7th Floor<br>Boston, MA 02108<br>(617) 635-9320 |

9